# CHICAGO & NORTH WESTERN RAILWAY COMPANY AND ANOTHER v. JOSEPH G. VERSCHINGEL AND OTHERS.[1]

No. 30,779.

June 26, 1936.

[1]Reported in 268 N. W. 2, 709.

*A. L. Janes* and *Warren Newcome*, for appellants.

*Charles L. DeReu*, for respondent Joseph G. Verschingel.

*Stinchfield, Mackall, Crounse, McNally & Moore*, for respondent Steller Transportation Company.

Holt, Justice.

The appeals are from orders of the district court denying the motions of appellants to vacate its findings and orders affirming the orders of the railroad and warehouse commission granting each respondent a certificate of public necessity and convenience to operate trucks between fixed termini, and grant a new trial. The appeals to the district court were submitted upon the evidence taken before the commission, except as to the value of the services of respondents' attorneys in the appeal.

The assignments of error are: (1) That the court erred in determining that the orders of the commission were lawful and reasonable notwithstanding that its orders were not supported by adequate findings of fact, were not justified by the evidence, were contrary to law, and were unlawful and unreasonable, based solely upon the ultimate conclusion that public necessity and convenience exists; (2) in awarding respondents attorneys' fees; (3) in reopening the original application of respondent Verschingel.

The record does not disclose any application to the commission to make any other findings of fact than those made; nor was the trial court requested to amend or modify its findings. L. 1925, c. 185, 1 Mason Minn. St. 1927, §§ 5015-1 to 5015-19, placed the motor vehicle transportation for.hire within the jurisdiction of the

railroad and warehouse commission, hereinafter referred to as the commission. By § 12 thereof (1 Mason Minn. St. 1927, § 5015-12), G. S. 1923, c. 28, and acts amendatory thereof are made applicable to proceedings instituted thereunder before the commission and removed to the district and supreme courts for review. Some of the matters so coming before the commission and before the courts, to review the decisions of the commission, require specific findings of fact. Where the statute specifically calls for findings of fact, the decision, whether of the commission or the district court, cannot stand unless such findings are made. But § 5 (§ 5015-5), governing the issuance of the certificates involved in this appeal, merely provides what the written petition for a certificate must state. No contention is here made that the petitions were not in proper form or that all the facts alleged therein were not proved adequately. Section 8 (§ 5015-8) provides:

"If the Commission shall find from the evidence that public convenience and necessity require the service proposed, or any part thereof as the Commission shall determine, a certificate therefor shall be issued."

So the ultimate fact to be found is that public convenience and necessity require the service proposed by the petitioner. However, the same section provides that in determining whether or not a certificate should be issued the commission should give reasonable consideration "to the transportation service being furnished by any railroad, and shall give due consideration to the likelihood of the proposed service being permanent and continuous throughout 12 months of the year and the effect which such proposed transportation service may have upon other forms of transportation service which are essential and indispensable to the communities to be affected by such proposed transportation service, and to the traffic already existing upon the route proposed to be traveled and the effect that such proposed service may have upon existing travel upon said route and the excess cost of maintaining such highway on account of the installation of such additional service, if any." It is to be noted that no finding is required to be made by the com-

mission as to any of the matters which it is directed to consider. The reason may well be that the matters to be considered are not susceptible of specific and definite findings. In this instance the only parties opposing the granting of the certificates were appellants, two railway companies operating between the same fixed termini that respondents proposed to transport "less than car load" freight between by motor truck, *viz.*: between the Twin Cities and Redwood Falls, and Marshall. Respondent Verschingel was granted a certificate of public convenience and necessity covering a freight auto transportation service between the Twin Cities and Marshall, Minnesota, *via* state trunk highways Nos. 212, 22, and 19, with no service between such termini; and respondent Steller Transportation Company a like certificate covering a local freight transportation service in extension of its existing line between the Twin Cities and Olivia and Marshall *via* Redwood Falls and trunk highways Nos. 71 and 19, and between Granite Falls and Marshall *via* trunk highway No. 17, provided no service be afforded Green Valley, Cottonwood, and Manley Falls.

The main argument of appellants is based on the fact that respondents, in 1931, petitioned for the right to transport freight between the same termini, which petitions were denied, after a hearing, by orders filed in 1932, and that the additional testimony taken at the instant hearing, in 1934, does not disclose any change in the situation going to show public convenience and necessity for the proposed service to be rendered by respondents. In fact, it appears that the railroads have now reduced rates from what they were at the time of the first hearing so that they are now the same as the proposed rates to be charged by respondents except for the saving of one pickup, that is, for delivery, from the railroad station to the door of the consignee. This amounts to five cents a hundred pounds of the freight. There were other matters than the difference in rates that entered into the petitions of 1931 which were eliminated on the hearing of the subsequent applications for certificates of public convenience and necessity. There had been some change in train service. Respondents eliminated all service between termini.

That public convenience is served by transportation of less than carload freight by motor trucks between either Redwood Falls and Marshall and the Twin Cities does not admit of doubt. Motor trucks which, as these, require no stops between the termini make the distance in four or five hours. The record does not show any grievance against the freight service rendered by appellants. But, in the nature of things, it cannot be as expeditious and hence not so convenient as that by motor trucks. Their speed equals or exceeds that of trains, and there is no delay in the delivery. There is less handling of packages, and consequently the loss by breakage is negligible. To what extent the transportation by motor trucks of respondents would financially affect appellants the record does not show. It does appear that some business houses at Marshall have their own auto truck service to the Twin Cities, others hire truck owners to transport their goods to and from said cities as they have occasion, all such transportation by motor vehicles being now regulated by L. 1933, c. 170, 3 Mason Minn. St. 1934 Supp. §§ 5015-20 to 5015-44, under the jurisdiction of the commission. How much such transportation depletes the freight that otherwise would go to appellants there was no attempt to show. Appellants contend that although § 4651 provides: "No further pleadings than those filed before the commission shall be necessary. Such findings of fact shall be prima facie evidence of the matters therein stated, and the order shall be prima facie reasonable, and the burden of proof upon all issues raised by the appeal shall be on the appellant," yet there must be findings of fact upon which the ultimate conclusion of public convenience and necessity must rest. To this proposition are cited Western Buse Tel. Co. v. N. W. Bell Tel. Co. 188 Minn. 524, 248 N. W. 220; State v. G. N. Ry. Co. 130 Minn. 57, 153 N. W. 247, Ann. Cas. 1917B, 1201; State v. G. N. Ry. Co. 135 Minn. 19, 159 N. W. 1089, 1090; Florida v. United States, 282 U. S. 194, 51 S. Ct. 119, 75 L. ed. 291; Yowell v. Cleveland C. C. & St. L. Ry. Co. 360 Ill. 272, 195 N. E. 667; Canton-East Liverpool Coach Co. v. Public Utilities Comm. 123 Ohio St. 127, 174 N. E. 244. The Western Buse Telephone Company case involved the rates for exchange services between telephone companies, the claim on appeal being

that those fixed by the commission were confiscatory. Whether this was so or not depended upon ascertainable facts as to cost of construction and depreciation of the telephone system or plant, and operating expenses, and necessarily called for findings in respect thereto. In the first case against the Great Northern Railway Company, 130 Minn. 57, 153 N. W. 247, Ann. Cas. 1917B, 1201, the trial court held unreasonable the order of the commission requiring the railway company to restore a Sunday train service as a public necessity. This court sustained the court's finding on the proposition that public policy is against compulsory Sunday labor. In that decision it was said that it would have been difficult to sustain the decision of the trial court if the order of the commission had concerned the operation of a weekday train. The second Great Northern case, 135 Minn. 19, 159 N. W. 1089, was an appeal from the commission's order requiring the railway company to construct a depot of brick or some fireproof material at Ada. The trial court held the order reasonable, and this court, affirming the order, said [135 Minn. 22]:

"This court does not consider the wisdom or expediency of the order. The court ascribes to the findings of the commission 'the strength due to the judgments of a tribunal appointed by law and informed by experience,' and its conclusion, when supported by substantial evidence, is accepted as final."

The Florida case concerned conflict of interstate and intrastate rates, and, consequently, confiscation and discrimination and such basic facts as cost of the systems involved, depreciation, earnings, and operating expenses, and hence findings in respect thereto which justify the order of the commission, or the court. In the Yowell case the commerce commission's order, requiring the railway company to construct and maintain a grade crossing, was reversed for the insufficiency of the findings to sustain the order. The Illinois statute (Cahill's Rev. St. 1933, c. 111a, par. 84, p. 2205) requires the commission [360 Ill. 275] "to make and render findings concerning the subject matter and facts inquired into and to enter its order based thereon. The requirement is mandatory that the find-

ings of fact upon the principal issues be sufficiently specific to enable the court to review intelligently the commission's decision and to ascertain whether the facts on which the order is predicated afford a reasonable basis for it." We have no such mandatory requirement with respect to the issuing of certificates of public convenience and necessity to operate motor trucks carrying freight between fixed termini along a regular route over a public highway. The Ohio case held unreasonable an order of the public utilities commission issuing a certificate of convenience and necessity to operate a bus service on the ground that there was no necessity for it shown by the applicant, it appearing that there were other bus services over the same route.

The certificates of public convenience and necessity to respondents to transport freight by motor vehicles in competition with appellants cannot be regarded as depriving the latter of their property. So no issue of confiscation or discrimination is involved. As already stated, clearly public convenience is served by respondents' service in transporting freight in less than carloads between the fixed termini over these routes. The fact that large shippers so do by their own motor trucks and by contract carriers operating under L. 1933, c. 170, demonstrates this, and likewise tends to prove public necessity, for, to the small merchant or shipper should be available as quick and efficient transportation as to the large shipper. In respect to the meaning of the word "necessity" in conjunction with the words "public convenience," this from Wabash C. & W. R. Co. v. Commerce Comm. 309 Ill. 412, 418, 141 N. E. 212, 214, seems appropriate:

"When the statute requires a certificate of public convenience and necessity as a prerequisite to the construction or extension of any public utility, the word 'necessity' is not used in its lexicographical sense of 'indispensably requisite.' If it were, no certificate of public convenience and necessity could ever be granted." The court, after citing authorities, concludes [309 Ill. 419]: "The necessity to be provided for is not only the existing urgent need but the need to be expected in the future, so far as it may be anticipated from the

development of the community, the growth of industry, the increase in wealth and population and all the elements to be expected in the progress of a community."

In North Bend Stage Line, Inc. v. Denney, 153 Wash. 439, 448, 279 P. 752, 755, it is said:

"The convenience of the public must not be circumscribed by according to the word 'necessity' its lexicographical meaning of 'an essential requisite.' The statute is to be so construed as to encourage, rather than retard, mechanical and other improvements in the appliances devoted to the public service, and in the use thereof in that service, to the end that both the quality and quantity of that which is offered to the public for its pleasure, convenience or necessities may be improved and increased."

We conclude that there was evidence supporting the commission's order, for, as said in Schain v. G. N. Ry. Co. 137 Minn. 157, 160, 162 N. W. 1079, 1080:

"The law is well settled. The court must let the orders of the commission stand, unless they are shown to overstep the bounds placed upon the exercise of its power. Its function is administrative and the court, in reviewing its order on appeal, cannot try the matter anew and substitute its judgment in place of the commission. The court is not to inquire whether the order is the best solution of the problem presented, but whether it is unreasonable or in violation of some constitutional or legal right of the railroad. The burden is upon the railroad, in case of appeal, to show that the order is not reasonable."

Within this rule, appellants have not shown that these orders, permitting respondents to carry as a common carrier freight in less than carload lots between the Twin Cities over regular routes and Redwood Falls and Marshall, are unreasonable.

The court allowed respondents attorneys' fees to be taxed against appellants under 1 Mason Minn. St. 1927, § 4657, reading:

"In any proceeding in district or supreme court under the provisions of this chapter, or under any law relating to common carriers

or public warehousemen, whether by appeal or otherwise, the court may order the payment of such counsel fees and disbursements as it deems just and reasonable."

The chapter in which this section is found is devoted to the regulation of railroads and public warehouses and the duties of the commission to enforce the statutes or its orders made pursuant thereto. These proceedings were not under the chapter in which § 4657 is found. Nor are these proceedings to enforce as against appellants any duty placed upon them as common carriers or warehousemen, nor are they charged with violating any statute or order relating thereto. They simply opposed granting respondents a privilege, and appealed from the orders of the commission. We are of the view that on such appeals as this § 4657 is not applicable. In Abrahamson v. C. N. Ry. Co. 177 Minn. 136, 225 N. W. 94, the railway company's petition to discontinue an agency service at a station was granted by the commission, but was reversed on appeal to the district court, and counsel fees were allowed against the company; but that was in a proceeding brought under 1 Mason Minn. St. 1927, c. 28, and the appeal was to enforce a right to a service placed on the company by law. If the appeal had been taken by any carrier operating under L. 1933, c. 170, we do not think under said § 4657 attorneys' fees could have been imposed upon such appellant if unsuccessful. We therefore think the attorneys' fees allowed should be eliminated and only the ordinary statutory costs and disbursements taxed against appellants.

The point made, that the commission was without authority to open its decision of 1932 and allow respondent Verschingel to proceed thereunder rather than petition anew, we do not consider fatal. It relates to the procedure before the commission which it ought to control unless some statute otherwise directs.

The orders are affirmed except as to the counsel fees allowed.

DEVANEY, CHIEF JUSTICE, took no part in the consideration or decision of this case.

UPON APPEAL FROM CLERK'S TAXATION OF COSTS.

On August 10, 1936, the following opinion was filed:

PER CURIAM.

Respondents appeal from the clerk's taxation of costs, he having refused to tax costs in favor of respondents and having taxed such in favor of appellants.

2 Mason Minn. St. 1927, § 9486, authorizes this court in its discretion to allow costs to the prevailing party not exceeding $25, but "in all cases the prevailing party shall be allowed his disbursements necessarily paid or incurred."

Appellants were the prevailing parties on this appeal because the orders appealed from were modified. Henry v. Meighen, 46 Minn. 548, 551, and 552, 49 N. W. 323, 646. The orders included substantial allowances of attorneys' fees to be taxed against appellants, and these were eliminated by the appeal. It is true that on the main proposition of the appeal (the validity of the certificates issued to respondents) appellants were unsuccessful; but that does not preclude them from claiming that they prevailed, for unless they had appealed they would have been compelled to pay substantial sums to respondents which the latter were not entitled to. The prevailing party does not forfeit the right to disbursements, even though a large part thereof went for printing parts of the record not bearing on the point which caused the modification of the order, so long as all that part printed was necessary to present the various assignments of error raised by the appeal. Curry v. Sandusky Fish Co. 88 Minn. 485, 490, 93 N. W. 896. It is perfectly plain that when in the opinion herein it was said: "We therefore think the attorneys' fees allowed should be eliminated and only the ordinary statutory cost and disbursements taxed against appellants," the reference was to the costs and disbursements in the district court and not to those on this appeal.

The clerk's taxation is affirmed.