(No. 30017.—

ILLINOIS CENTRAL RAILROAD COMPANY *et al.*, Appellees, *vs.* ILLINOIS COMMERCE COMMISSION, Appellant.

*Opinion filed May 22, 1947—Rehearing denied September 16, 1947.*

324

GEORGE F. BARRETT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and JAMES C. MURRAY, all of Chicago, and W. F. GRAY, of Springfield, of counsel,) for appellant.

WILLIAM J. O'BRIEN, JR., of Chicago, (VERNON W. FOSTER, CHARLES A. HELSELL, JOSEPH H. WRIGHT, all of Chicago, and MEEKS & WISE, of Danville, of counsel,) for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Vermilion county which set aside an order of the Illinois Commerce Commission pertaining to the closing of an agency station at Armstrong, located on appellees' lines in Vermilion county. The proceedings originated by a petition filed with the commission pursuant to section 49a of the Public Utilities Act. (Ill. Rev. Stat. 1945, chap. 111⅔, par. 49a.) The petition, filed by the Illinois Cen-

tral Railroad Company and the Railway Express Agency, Inc., requested permission to close the agency station at Armstrong and make the same a prepay station. The commission denied the petition, and, upon review of the decision, the circuit court set aside the order of the commission and remanded the cause. The appeal to this court has been perfected by the commission from the judgment of the circuit court.

The petition filed with the commission set forth that the Illinois Central Railroad Company is a public utility and that the Railway Express Agency, Inc., in connection with the business of handling express by rail, was using the facilities of the railroad and the agency at Armstrong. The petition further alleged that the business being done at the Armstrong agency was slight and that the same could be handled at petitioners' agencies at Penfield and Potomac, without inconveniencing the public; and that public convenience and necessity did not require an agent at Armstrong to handle the business of petitioners and of the public with petitioners, and asked that this agency be made a prepay station.

The village of Armstrong is an unincorporated rural community, located on one of the lines operated by the Illinois Central Railroad Company in Vermilion county, with a population of approximately 275. It is four miles by rail west of Potomac and three and eight-tenths miles by rail east of Penfield. Agency stations were maintained at both of these points. It was proposed that these places handle the business now being handled at Armstrong. By highway, Armstrong is about four and one-half miles west of Potomac and about five and one-half miles east of Penfield. No passenger service is provided at Armstrong and freight trains are operated on an average of about one train every two days, no regular schedule being provided.

The evidence discloses that in the event the agency station at Armstrong is closed, the same service can be

obtained either in Potomac or Penfield, and that telephone service is available between the three towns without toll charge. The evidence reveals there has been a steady decrease in business at the Armstrong agency the past three and one-half years; that for the first seven months of 1945 the Illinois Central received as its proportion the sum of $871.69, while the wages of the agent were $1167.68. Evidence produced by the petitioners discloses that the amount of business at Armstrong should not consume more than one hour of an agent's time per day. Only one witness was produced to oppose the petition requesting that the agency be discontinued. This witness testified that he lived one-half mile from Armstrong, was engaged in the general farm and livestock business, that his inbound shipments on livestock averaged from nine to fourteen carloads a year, and that not all of this was shipped by way of the Illinois Central Railroad Company to Armstrong. He further testified that in the event the agency should be removed from Armstrong, he would use the station at Ellis, as well as Penfield or Potomac. Witness testified that he could not state that there were any other shippers of livestock by rail at Armstrong.

Appellant contends that the order of the commission is supported by the evidence and should be sustained. It is urged that the evidence is sufficient to support the order of the commission finding that in the interest of public necessity and convenience the agency station at Armstrong should be maintained. While it is true that courts will not substitute their judgment for that of the commission, we are bound to review the findings of the commission to determine whether there is substantial evidence to sustain the order of the commission. *Lowden* v. *Commerce Com.* 376 Ill. 225.

The doctrine of convenience and necessity has been the subject of much judicial consideration. No set rule can be used as a yardstick and applied to all cases alike. This

doctrine is a relative or elastic theory rather than an abtract or absolute rule. The facts in each case must be separately considered and from those facts it must be determined whether or not public convenience and necessity require a given service to be performed or dispensed with. The benefit, to one, of the abandonment must be weighed against the inconvenience and loss to which the other will thereby be subjected. We must consider the question as to whether the cost of maintaining the agency is out of proportion to the benefit to the public as a whole. The maintaining of an uneconomic service resulting in an economic waste cannot be justified or excused by the showing that the service has been in the convenience and necessity of some individual. The convenience and necessity required are those of the public and not of an individual or individuals. *O'Keefe* v. *Chicago Railways Co.* 354 Ill. 645.

After a careful consideration and examination of all of the evidence, we are of the opinion the order of the commission is against the manifest weight of the evidence. In arriving at this conclusion we have considered all of the factors and find that the economic waste caused by the operation of the agency outweights the benefits and convenience to the public.

Appellant urges that the financial condition of the entire system is a dominant factor to be considered along with all other factors, such as the population of the station, the proximity of other stations, etc., in determining the question before the commission. Objection is made that no evidence was submitted showing the full financial condition of the railroad. In support of this contention, appellant cites the case of *People ex rel. Cantrell* v. *St. Louis, Alton and Terre Haute Railroad Co.* 176 Ill. 512. This was an action of *mandamus* to compel the utility to furnish passenger service upon its line from DuQuoin to Eldorado, being a part of a system operating from East St. Louis to Eldorado. It was urged that consideration must then be

given to the financial structure of the entire system rather than only concerning the part of the road over which service was requested. It was shown that there been no separate account or reports of earnings covering the operations from Eldorado to DuQuoin. Instead, the reports were made on the basis of operation from Eldorado to East St. Louis. The court found that there was not such insufficiency of business or profits to present a valid defense to the application for *mandamus*. The financial condition of the entire system might well be taken into consideration as a factor to be considered in arriving at just where the balance lies in weighing the question of public convenience and necessity. Many other factors are also to be considered, namely, the volume of business done at the station, the number of people to be accommodated, the present facilities, proximity to other agency stations, and the cost of furnishing such services.

We have considered the enumerated factors, and even assuming the financial structure of the entire system would not be materially affected by this agency's loss, nevertheless, the scales in weighing public convenience and necessity preponderate in favor of the curtailment of the service. Assuming the financial structure of the entire system to be in a most favorable condition, this in itself would not justify the continuation of an economic waste occasioned by the retention of an agency station when not in the interest of public necessity and convenience.

Appellant further contends that the circuit court erred in not holding that the commerce commission is required to consider the provisions of statutes regulating the conduct and operations of railroads. Appellant states that it does not contend that the commission does not have plenary jurisdiction to here consider and determine utility matters, but that this jurisdiction does not affect the validity of regulatory statutes covering railroad operations, and that these statutes must be considered by the commission. In

particular, appellant points out certain requirements of the statute on railroads and warehouses, (Ill. Rev. Stat. 1945, chap. 114, pars. 48, 77 and 85,) providing that railroads shall build and maintain depots in all towns and villages with a population of two hundred or more, requiring these to be lighted and warmed, and requiring baggage to be checked, receipts provided, etc.

It is urged that these provisions apply and that the Illinois Commerce Commission has no authority to regulate contrary to the requirements of the statute on railroads and warehouses. The legislature, by the creation of the Illinois Commerce Commission, vested this commission with general supervision of all public utilities. (*Chicago North Shore and Milwaukee Railroad Co. v. City of Chicago*, 331 Ill. 360.) The Public Utilities Act creating the Illinois Commerce Commission covered the entire subject of public utilities and has been held to be complete in itself and to cover the entire subject. (*Northern Trust Co. v. Chicago Railways Co.* 318 Ill. 402.) It therefore appears that the matter here is within the jurisdiction of the commission. As we said in the case of *Illinois Central Railroad Co. v. Commerce Com. post*, 387, at this term, "We are of the opinion that the provisions of paragraph 48 of chapter 114 do not mandatorily require an agency station in villages that contain more than 200 inhabitants, but that the manner of operating railroad depots in such communities must be conformably with public convenience and necessity."

Appellant lastly contends that the circuit court erred in relying upon the decision in the case of *Illinois Central Railroad Co. v. Commerce Com.*, 375 Ill. 585. Objection is made to the statement of the lower court in its opinion that "the facts, law and reasoning of the said case is nearly identical with the case at bar." We are familiar with the facts and the decision in the case referred to and, likewise, notice considerable similarity between that case and the

case at bar. In both cases the real question to be decided was that of public convenience and necessity. In the above-cited case, at page 588, the court said: "The real question is, was it shown that the public good derived from the maintenance of the agency station overcame the loss in maintaining it as such? The application of this test in a case that does not involve an absolutely necessary service entails a balancing of the benefit to the public arising from a continuance of the agency against the loss to the railroad company. It is not reasonable to require the maintenance of an agency station when the cost of such service is out of proportion to the revenue derived from that portion of the public benefited thereby, especially where a substitute service may be provided which will afford the same essential service but which is less convenient."

The facts in each case of this nature, while similar, are nevertheless unrelated to the extent that each must be considered separately and weighed to determine where the question of public convenience and necessity lies.

We are, therefore, of the opinion that the retention of the agency station at Armstrong would not be in the interest of public convenience and necessity, and that the order of the Illinois Commerce Commission has no substantial basis in the evidence.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*