(No. 29842.—

ILLINOIS CENTRAL RAILROAD COMPANY *et al.*, Appellants, *vs.* ILLINOIS COMMERCE COMMISSION, Appellee.

*Opinion filed September 18, 1947.*

WILLIAM J. O'BRIEN, JR., of Chicago, (VERNON W. FOSTER, CHARLES A. HELSELL, and JOSEPH H. WRIGHT, all of Chicago, and FEIRICH & FEIRICH, of Carbondale, of counsel,) for appellants.

GEORGE F. BARRETT, Attorney General, of Springfield, (WILLIAM C. WINES, JAMES C. MURRAY, and RAYMOND S. SARNOW, all of Chicago, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants herein, the Illinois Central Railroad Company and the Railway Express Agency, Inc., filed a petition with the Illinois Commerce Commission seeking authority to close a joint agency station at Makanda, Illinois. The railroad proposed to substitute prepay service at the station, while from the testimony it appears that the Railway Express Agency proposed to furnish the same service as in the past but independent of the railroad. After a hearing the commission entered an order denying the petition and, on review, that order was affirmed by the circuit court of Jackson county. The railroad and the express agency bring this appeal.

Before going to the facts of this case it should be noted that this court has recently considered the question involved in petitions to discontinue agency stations in *Illinois Central Railroad Co.* v. *Illinois Commerce Com. ante,* p. 387, decided at the March, 1947, term. In that case the commission contended, as it does here, that its denial of appellants' petition was mandatory because the provisions of the Railroad and Warehouse Act, (Ill. Rev. Stat. 1945, chap. 114, par. 48,) require the railroad to maintain an agency depot at the place in question, because it is a village of more than 200 inhabitants. A complete discussion of this contention is found in *Illinois Central Railroad Co.* v. *Illinois Commerce Com. ante,* p. 387, *Atchison, Topeka and Santa Fe Railway Co.* v. *Illinois Commerce Com. post,* p. 406, and other cases there cited, and no reiteration or further comment is required here other than to state the conclusion reached in the first case cited, that "the provisions of paragraph 48 of chapter 114 do not mandatorily require an agency station in villages that contain more than 200 inhabitants, but that the manner of operating railroad depots in such communities must be conformable with public convenience and necessity." There is no merit to the contention that the provisions of the statute are mandatory.

It is also contended here by the commission that the railroad has the burden of proving that the cost of maintaining the station sought to be abandoned is so great as to amount to confiscation; and that the burden is not met where it is shown that although the station in question is operating at a loss, the entire railroad operates at a profit. This contention has likewise been discussed and refuted in the recent cases previously referred to. The test to be applied is whether the economic waste caused by the operation of the agency outweighs the benefits and convenience to the public. We have noted that economies should be effected wherever practicable, especially where there will

be no substantial curtailment of services. (*Illinois Central Railroad Co.* v. *Illinois Commerce Com.* 375 Ill. 585.) In the light of these holdings, appellee's contention that loss amounting to confiscation must be proved before a railroad is entitled to abandon a station is not tenable.

We will now examine the facts to determine whether there is sufficient evidence to support the finding of the commission and the judgment of the circuit court that it is in the interest of public necessity and convenience that the agency station at Makanda be continued. Although this court will not substitute its judgment for that of the commission, it is bound to review the record to determine whether there is substantial evidence to sustain the order of the commission. *Illinois Central Railroad Co.* v. *Illinois Commerce Com. ante,* p. 323; *Lowden* v. *Illinois Commerce Com.* 376 Ill. 225.

The record shows that Makanda is an unincorporated village of 258 inhabitants, located on the main line of the Illinois Central railroad, 8.6 miles south of Carbondale and 7.3 miles north of Cobden, at which points agency stations are maintained. It is a fruit raising and farming community with no industrial activity. It is served by a local passenger train making daily stops in both directions, a local freight train handling carload shipments only, and by Illinois Central "over-the-road" truck service, which handles less than car load lots. The appellant railroad proposes no change in this service but rather seeks to control it through the agencies of Cobden and Carbondale. If the agent at Makanda is removed, all inbound freight would have to be prepaid, and all outbound shipments collect, unless the shipper elected to prepay through Cobden or Carbondale. Bills of lading would be signed by the conductor of the freight or by the Cobden or Carbondale agent, and orders for empty cars could be placed with any of the three. Telephone service is available and the cost of a call from Makanda to Cobden or Carbondale is ten

cents. The agents at Cobden and Carbondale would use this method of notifying consignees in advance of the arrival of the freight. Passengers would board the train at Makanda and pay their fare to the conductor without increase in rates. It can be seen thus that the substitute service will afford the same essential service but will be slightly less convenient.

The evidence shows that the annual average of recurring carload freight, both inbound and outbound, amounted to about ten carloads per year, although in the first seven months of 1945 there were none. The Illinois Central proportion of the gross revenue obtained at Makanda and the wages of the agent for the years 1942 to the first seven months of 1945, are as follows:

| Year | Illinois Central | Agent |
|------|------------------|-------|
| 1942 | $3,469.67 | $2,051.66 |
| 1943 | $2,789.96 | $2,025.17 |
| 1944 | $4,583.22 | $2,161.07 |
| 1945 | $1,022.28 | $1,197.80 |

The increase in revenue of 1944 was the result of an experimental program of growers to encourage the shipment of peaches from Makanda. However, witnesses for both parties testified to a preference of shipping from Cobden, where icing facilities existed, and where carload lots were made up in a shorter time than it took at Makanda, and this service at Makanda was discontinued in 1945. It appears too, that in the year of the experiment, more peaches grown near Makanda were shipped from Cobden than Makanda.

Appellants also presented evidence that the agent now at the Makanda station was not needed there from an operating standpoint, but was greatly needed at other points on the line due to a shortage of trained agents and operators.

David Abbott, a landscape architect for the State Division of Parks in Illinois, appeared as a witness and told

of a plan to enlarge the Giant City State Park near Makanda, and presumed that materials would be sent over the appellant railroad. He was not, however, familiar with the manner in which shipments were handled or proposed to be handled.

F. A. Heern, a farmer and partner in a general store in Makanda, testified as to his use of the agency at Makanda and by his own admission he used only the express service and not the railroad freight service. He and other witnesses of appellee indicated that a majority of the produce and fruit raised in the vicinity were taken to the station at Cobden or Carbondale or hauled by truck, or, if sent from Makanda, the express service was used.

The issue involved is whether the public convenience and necessity demand continuation of an agent at Makanda. This depends upon whether the public is making sufficient use of the agent to afford a basis in fact for the creation of such demand and whether the discontinuance of such agency will result in material inconvenience and loss to the public. These are fact questions.

The proof here shows that with the exception of 1944, when an experiment, later discontinued, was in effect, the wages paid by the railroad to the agent amounted, in 1942 to approximately 59 per cent of the railroad's gross revenues at this point, 72 per cent in 1943, and in the first seven months of 1945 approximately 116 per cent. In 1944, during the experiment referred to, the appellant railroad paid its agent at Makanda over 47 per cent of its gross revenue. The theory of regulation of public utilities is protection of the public and the assurance of adequate service on the one hand, and, on the other, a fair opportunity to the utility to, by business economy, secure a reasonable return from such service. It does not amount to a fair opportunity when the utility, its income falling, pays to its agent at the station here involved from 47 per cent to 116 per cent of its gross revenue. (*Illinois Central Rail-*

*road Co.* v. *Illinois Commerce Com.* 375 Ill. 585.) Unless the evidence shows that public convenience and necessity demand the service, the Commerce Commission is not justified in requiring it.

No facts stated by the Commerce Commission show the necessity for a railroad agent at this point. The public convenience and necessity required to be shown as a basis for the Commerce Commission's order are those of the public and not of an individual or number of individuals. *Yowell* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 360 Ill. 272; *O'Keefe* v. *Chicago Railways Co.* 354 Ill. 645; *Roy* v. *Commerce Com.* 322 Ill. 452.

Applying the tests laid down in the late decisions previously discussed and in the case of *Illinois Central Railroad Co.* v. *Illinois Commerce Com.* 375 Ill. 585, we are of the opinion that there is nothing in the evidence to support the finding of the commission that public convenience and necessity require the railroad to operate an agency station at Makanda. As we read the record, the order of the commission is based largely on the testimony of witnesses who told of the necessity and convenience of an express service. There is no concrete evidence or affirmative pleading that the express agency would continue its service, other than the testimony of C. S. Scott, a trainmaster for appellant railroad, who testified that he had been assured by the express company that it would maintain an agency there. Under this record, as we read it, there exists no basis for the finding of convenience and necessity demanding that an agency station be maintained at Makanda.

The judgment of the circuit court is reversed, and the cause remanded, with directions that it be remanded to the commission with directions to enter an order granting appellants the relief sought by their petition.

*Reversed and remanded, with directions.*